[No. 38228.   Department Two.   October 20, 1966.]

EAVER SEHOLM et al., *Appellants*, v. EDWIN HAMILTON et al., *Respondents*.*

*Russell Millhouse* and *J. S. Kurtz*, for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Frederick V. Betts*, for respondents.

HAMILTON, J.—At approximately 9:15 p.m. on June 11,

*Reported in 419 P.2d 328.

1963, respondent (defendant) Mrs. Edwin Hamilton, while driving alone in her automobile, struck appellant (plaintiff) Steven Seholm, a minor, then 6 years and 48 days of age. Eaver Seholm, Steven's father, individually and as guardian ad litem for his minor son, brought this action against respondents, Mr. and Mrs. Edwin Hamilton, for the damages sustained as a result of the accident.

The Seholms, in support of their claim, asserted that Mrs. Hamilton was negligent in that she drove into Steven while he was upon the shoulder of the road, or that she was proceeding at an unsafe speed under the conditions then existing, or that she failed to maintain a proper lookout. In response, the Hamiltons denied any negligence and alleged that the accident was unavoidable. Later they sought to amend their answer to allege contributory negligence on the part of Steven. The trial court, however, rejected the proposed amendment upon the ground that Steven, being under 7 years of age at the time of the accident, was conclusively presumed to be incapable of negligence.

Upon the issues so framed, the cause went to trial before a jury. The jury found for the Hamiltons. Appropriate post trial motions were interposed by the Seholms and denied by the trial court. The Seholms appeal. We reverse and remand for new trial.

For convenience, we hereafter refer to Steven Seholm and Mrs. Hamilton as though they were the sole appellant and respondent respectively.

The accident in question occurred on Britton Road in Whatcom County, at a point just beyond the city limits of Bellingham, where the posted speed limit was 60 miles an hour. Britton Road, at the site of the accident, is a straight, north-south, 18-foot, 2-lane, macadamized roadway free of obstructions to view and bordered on each side by grassy shoulders. The surface of the road, while otherwise level, slopes gradually to the south and has some chuckholes. At the time of the accident, it was raining and dusky to the point that some vehicles had their lights on and others did not.

The evidence, without dispute, establishes that prior to

the accident respondent was proceeding southerly on Britton Road and appellant, dressed in dark clothing, was in the process of crossing the road from east to west. Whether appellant had completed the crossing before he was struck is, however, in dispute.

Appellant, whose memory of surrounding events is extremely vague, testified that he was across the roadway and walking southerly on the west shoulder when he was struck. Respondent, on the other hand, testified that she was proceeding in her proper lane of travel at about 30 miles an hour, with headlights and windshield swipes on; that visibility was limited because of the rain and the twilight condition; that she first observed appellant running across the road and into her lane of travel at a point when about half of his body was visible above the left front hood of her vehicle; and that she immediately applied the brakes and then felt and heard the impact.

The testimony of other witnesses, coupled with the physical facts and photographic evidence introduced, tends to lend considerable support to respondent's account of the accident, although such evidence does not wholly negate appellant's version or contentions of negligence. Briefly, such evidence indicates (a) that respondent's vehicle laid down some 75 feet of tire or skidmarks, which commenced in her normal lane of travel and either drifted gradually toward and slightly over the right edge of the roadway or off onto the grassy shoulder and back to the road edge; (b) that respondent's vehicle came to rest with both right wheels 8 to 10 inches off the blacktop with appellant pinned under the muffler and lying in a chuckhole on the road surface; (c) a dent in the left front portion of the hood of respondent's automobile; and (d) that appellant undertook to cross the road with his jacket pulled over his head.

As heretofore noted, the trial court submitted the cause to the jury upon the theory that appellant was conclusively presumed to be incapable of contributory negligence. The trial court refused, however, to so instruct the jury or to permit appellant to argumentatively rebut statements of respondent's counsel in his argument to the jury to the

effect that it must find respondent was "entirely and solely to blame" for the accident.

On appeal, appellant makes seven assignments of error, six of which are directed to the giving or failure to give certain instructions and one to the action of the trial court relative to the statements contained in the summation of respondent's counsel. The primary theme running through or flowing from appellant's major assignments is twofold. It is to the effect that by the instructions given and refused, coupled with respondent's argument to the jury, (1) the issue of contributory negligence on the part of appellant was injected into the case, and (2) appellant's standard of care was equated to that of an adult.

We agree with both facets of appellant's theme; however, under the circumstances, we conclude that only the second facet warrants the granting of a new trial.

We arrive at this particular disposition because (1) we are of the opinion that the trial court erred in refusing to permit respondent to plead contributory negligence, an error, of course, which did not prejudice appellant, (2) there was in fact evidence before the jury which, if believed, distinctly pointed to negligence on the part of appellant, i.e., undertaking to cross a traveled highway with his jacket over his head, and (3) the trial court, in failing to instruct the jury pursuant to its theory that appellant was deemed to be incapable of negligence, and/or in refusing to permit appellant's counsel to rebut respondent's "solely to blame" argument, left the jury free to speculate upon and, if it chose, apply the standard definition of negligence to the evidence bearing upon appellant's conduct. The vacuum thus created—in which hung the evidence of appellant's potentially culpable conduct—coupled with the fact that the trial court also instructed upon the emergency and unavoidable accident doctrines, unduly weighted the scales in respondent's favor and to the prejudice of appellant.

We pause here to point out that the fact there was evidence before the jury upon which could be predicated a finding of active and causally related negligence on the part of appellant distinguishes this case from the cases of *Wool-*

608

*dridge v. Pacific Coast Coal Co.,* 22 Wn.2d 314, 155 P.2d 1001 (1945) and *Barber v. Reinking,* 68 Wn.2d 139, 411 P.2d 861 (1966). Each of the cited cases involved a 2-year-old child and peripherally considered the effect of a failure to instruct the jury upon the child's legal incapacity to be negligent. In the *Wooldridge* case, we held the absence of such an instruction was not prejudicial because there was no evidence bearing upon the child's conduct, and in the *Barber* case we reached a similar conclusion because the conduct of the child there involved could not be characterized as negligent. In neither case did we hold that the jury, in a proper case, could not and should not be instructed as to the incapacity of a child under six to be guilty of negligence. And, where there is evidence before the jury of conduct on the part of such a child which could be characterized as negligent, we can conceive of no logical reason why the jury should not be advised of the child's legal incapacity, so long as the conclusive presumption continues to be the law.

▮ Because we are remanding the case for new trial, we return briefly to the question of the propriety of the trial court's ruling that appellant, being over 6 but under 7 years of age, was conclusively presumed to be incapable of contributory negligence. Seemingly, the trial court predicated this ruling upon some incidental language found in *Graving v. Dorn,* 63 Wn.2d 236, 386 P.2d 621 (1963). If this be so, it is unfortunate, for such is not the holding of that case nor the law of this state. See *Tecker v. Seattle, Renton & So. Ry.,* 60 Wash. 570, 111 Pac. 791 (1910); *Gregg v. King Cy.,* 80 Wash. 196, 141 Pac. 340 (1914); *Jorgenson v. Crane,* 92 Wash. 642, 159 Pac. 796 (1916); *Von Saxe v. Barnett,* 125 Wash. 639, 217 Pac. 62 (1923); *Armstrong v. Spokane United Rys.,* 194 Wash. 353, 78 P.2d 176 (1938); and *Cox v. Hugo,* 52 Wn.2d 815, 329 P.2d 467 (1958). A reading of these cases, together with the *Graving* case, reflects the rule in this state to be that the conclusive presumption of incapacity on the part of the ordinary child to be contributorially negligent terminates at the age of 6 years. After the sixth birthday has been reached, and during the

ensuing tender years, a child's capacity and his compliance with the standard of care required of a child of like age become questions of fact.

Accordingly, we conclude the trial court erred in denying respondent's motion to amend her answer to allege contributory negligence. Upon remand she shall be permitted to make such an amendment, and upon retrial the trial court can submit the issue to the jury under appropriate instructions.

Because of the foregoing disposition, only two of appellant's remaining assignments of error require discussion. These relate to the trial court's instructions covering the emergency and unavoidable accident doctrines.

The *sine qua non* of an emergency within the scope of the emergency doctrine is confrontation by a sudden peril requiring instinctive action, and the rule is applicable only to conduct *after* a person has been placed in a position of peril by the negligence of another. *Sandberg v. Spoelstra,* 46 Wn.2d 776, 285 P.2d 564 (1955). It comprehends the availability of and a possible choice between courses of action after the peril arises. Otherwise, the doctrine blends into or merges with the theory of unavoidable accident.

As the record in the instant case stands, we find no claim by appellant that any conduct of respondent constituted negligence *after* respondent was in a position of peril, lest it be that respondent struck the appellant after he had successfully negotiated the road crossing immediately in front of respondent's vehicle. This, however, does not appear to be appellant's theory, nor does it appear to be consistent with respondent's version of the accident, and the propriety of submitting the instruction under such circumstances is questionable. With contributory negligence on the part of appellant a prospective issue in the case, the question of whether the evidence on retrial will justify or warrant the emergency instruction must be, however, left for determination by the trial court.

The availability of the doctrine of unavoidable accident on retrial becomes dubious, for, as we said in *Carraway v. Johnson,* 63 Wn.2d 212, 386 P.2d 420 (1963), it is

only when the accident appears to have been caused by a child too young to be charged with contributory negligence that the accident may be considered unavoidable within the contemplation of that doctrine. Thus, with contributory negligence on the part of appellant a potential issue, the giving of an unavoidable accident instruction could constitute error.

The judgment of dismissal is reversed and the cause is remanded for new trial.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., concur.

FINLEY, J., concurs in the result.