[No. 14098-5-II.   Division Two.   May 6, 1993.]

CARL W. PRICE, ET AL, *Appellants,* v. KITSAP TRANSIT, *Respondent.*

*Randy W. Loun* and *Coons & Loun,* for appellants.

*Leigh D. Erie* and *Gierke, Curwen, Metzler & Erie; Richard R. Stocking* and *Law Offices of Richard R. Stocking,* for respondent.

*Andrew G. Cooley* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amicus curiae.

ALEXANDER, C.J. — When a 4-year-old child activated an emergency stop device on a Kitsap Transit bus, causing the bus to come to a sudden stop, Carl Price, a passenger on the bus, was seriously injured. Price and his wife, Dorothy, appeal

a judgment of the Kitsap County Superior Court limiting their damages against Kitsap Transit to $25,953.50. They contend on appeal that the trial court erred in (1) finding that a 4-year-old child, Bradley Lanchester, was 80 percent at fault for damages sustained by Carl Price; and (2) concluding that Kitsap Transit was only severally liable for 10 percent of the Prices' total damages. Kitsap Transit cross-appeals, contending that the trial court erred in (1) denying its motion for directed verdict;[1] (2) finding that Kitsap Transit could have restrained Bradley Lanchester from activating an emergency stop button; (3) finding that the accident on the Kitsap Transit bus "exacerbated Carl Price's pre-existing condition" and caused the Prices' total damages of $259,535; (4) concluding that a 4-year-old child cannot be contributorially negligent; (5) finding that Kitsap Transit was at fault and liable for 10 percent of the Prices' total damages and failing to find that Bradley Lanchester and Nelson, his father, caused 100 percent of the total damages; and (6) holding a reasonableness hearing relating to the Prices' settlement with the Lanchesters.

On May 20, 1986, Carl Price suffered a "whiplash" type injury when a Kitsap Transit bus on which he was riding was struck from behind by another Kitsap Transit bus. On March 4, 1987, Price was again riding as a passenger on a Kitsap Transit bus. As the bus neared a stop, Nelson Lanchester and his 4-year-old son, Bradley, walked hand in hand to the front of the bus in order to exit. As the bus slowed preparatorily to stopping, Bradley and his father stood next to the first row of seats immediately behind the driver. Bradley then reached out and activated an emergency switch which was located to the right of the driver's seat. The

---

[1]We do not address this assignment of error because Kitsap Transit has not argued the issue in its brief nor has it cited any legal authority or relevant parts of the record to support the assignment of error. RAP 10.5.

switch was covered by metal on all sides except the front. Activation of the switch caused the bus to stop suddenly.

The unexpected stop caused Carl Price to be thrown forward in his seat and sustain injuries. He sought medical treatment for his injuries that day. In January 1988, Carl Price retired from his employment as a welder at the Puget Sound Naval Shipyard because he was unable to perform his work due to the injuries he sustained in the two bus accidents. Carl Price's retirement pay was less than the pay he received from employment at the shipyard.

Carl Price and his wife, Dorothy, brought suit in Kitsap County Superior Court against Kitsap Transit, Bradley Lanchester and Nelson Lanchester. The Prices sought damages from the Lanchesters for the injuries Carl Price allegedly sustained on March 4, 1987. Their claim against Kitsap Transit was for damages Carl Price allegedly sustained on May 20, 1986, and March 4, 1987.

The Prices settled their action against the Lanchesters for $3,000, an amount the superior court judge later determined was reasonable. He thereafter entered a memorandum opinion and order of reasonableness stating, "that as a matter of law the minor child, Bradley, would be immune from liability." Price also settled his claim against Kitsap Transit for the May 20, 1986, accident.

The remainder of the action against Kitsap Transit proceeded to a bench trial. The trial court found Carl Price to be without fault and it found the defendants at fault in the following percentages: Kitsap Transit 10 percent; Bradley Lanchester 80 percent; Nelson Lanchester 10 percent.

The trial court concluded that Bradley Lanchester could not, as a matter of law, be negligent, despite the fact he was 80 percent at fault. It further concluded that Kitsap Transit would be liable, "severally", for 10 percent of the damages and that the Lanchesters would not be jointly liable because Kitsap Transit was "the only defendant against whom judgment can be entered."

# I
## KITSAP TRANSIT'S APPEAL

■ For ease of understanding, we will first address most of the assignments of error that Kitsap Transit has made in its cross appeal. It assigns error to several factual findings of the trial court and to some of the conclusions of law. Our review of those assignments of error is limited to determining whether the findings are supported by substantial evidence and whether those findings support the trial court's conclusions of law and judgment. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978).

Kitsap Transit assigns error to the trial court's finding that "at the time there was a Kitsap Transit employee seated behind the bus driver who could have acted to restrain the 4-year-old child." Ralph Polk, a "worker-driver" employed by Kitsap Transit was assigned to the bus on which the accident occurred. He testified that he was required to sit immediately behind the driver and on the aisle of the bus near the emergency stop switch. He said that his job was to "punch tickets . . . sell tickets . . . handle funds . . . keep a tally sheet . . ." and take over driving for the regular driver if necessary. Polk was also responsible for controlling people on the bus if they violated any rules.

Polk testified that he was familiar with Bradley Lanchester and Bradley's father because they had been riding the bus regularly for 3 to 6 months prior to the date of the incident. He said that on March 4, 1987, Bradley and his father walked to the front of the bus when the bus was about 15 to 20 feet from a regular stop, stopping for about 5 seconds just behind the driver and next to Polk as the bus slowed to stop. Polk indicated that passengers commonly walk to the front of the bus as it is moving and stand behind the driver before the bus comes to a complete stop. He stated that:

> I saw Bradley reaching for the trash can and the next thing I know the little lever was flipped . . . It happened so quickly I really couldn't do much. Like I said, he reached toward the trash can and that's what I assumed he was going to do. The next thing you know the lever was flipped and just a split second.

Polk also testified that he knew from his experience as a parent that "little kids touch everything." In our judgment, Polk's testimony is sufficient to support the challenged finding.

Kitsap Transit next assigns error to the trial court's findings that the Prices sustained damages in the amount of $259,535, and that the March 1987 accident exacerbated Carl Price's preexisting condition.[2] It also asserts that the trial court erred in concluding that a judgment should be entered against Kitsap Transit for 10 percent of the total judgment, *i.e.*, $25,953.50.

The evidence presented at trial regarding Carl Price's medical treatment for his various problems was extensive. Carl Price testified that he felt he was getting better prior to March 4, 1987, and that "I wasn't missing as much work as I had the year before, and I thought I was doing real good." Price's wife, Dorothy, supported her husband's testimony, testifying that during the time between the two accidents, he was getting better. She also testified in support of an alleged loss of consortium. Carl Price testified that he planned to continue work until he was 65 years old, but because he had run out of sick leave and annual leave, he opted, after the accident, to take an early retirement instead of taking a chance that he would need to take leave without pay due to his back problems.

---

[2]The court found as follows:

"(4) Plaintiff Carl W. Price incurred some damaged [*sic*] on both the May 20, 1986 and March 4, 1987 incidences [*sic*]. Plaintiff Carl W. Price has degenerative disc disease and has had such for many years, and also had other physical difficulties. The March 4, 1987, incident which is the only incident at issue in this trial, exacerbated his pre-existing condition, which had become fairly asymptomatic before March 4, 1987.

"(5) After reviewing all the testimony, including the claim of Plaintiff Dorothy L. Price for loss of consortium, the Court finds that the damage incurred by the Prices with regard to the March 4, 1987, incident total $259,535.00, and of this the loss of consortium claim constitutes $7,500.00. The Court finds that Mr. Price has suffered and will suffer $139,263.00 in loss of wages, $100,000.00 in pain and suffering, $2,772.00 in past medical expenses, and $10,000.00 in future medical treatment."

Dr. Bergman, a specialist in neurology, testified that he treated Price beginning in August 1989. Based on the records and other materials that he examined, Bergman opined that Price would have pain on a permanent basis. He said:

I think his pain can be kept under reasonable control if he properly modifies his lifestyle, yet he will always have some degree of discomfort and will be kept back from certain activities. . . . the accident, the second one specifically, has plummeted him into a decompensation that has accelerated the decompensation that another ten years of aging would have brought.

Bergman concluded that on a more probable than not basis, Price's current condition was a result of the March 1987 accident. Dr. Bergman testified that he was aware that Price was employed as a welder. Bergman was asked:

If he was in significant pain and was unable to leave his work site because of loss of no longer having sick leave or vacation, is this a patient that you would recommend retirement from that type of occupation?

In response Bergman stated:

I would recommend retirement from that occupation given his clinical picture whether he had or didn't have sick leave. I am just hoping to do the right thing medically, I don't care if he has sick leave or not.

Clarke Whitney, a CPA specializing in financial planning, testified that Carl Price's early retirement resulted in a financial loss to the Prices of $139,263 when calculated to present value.

Our review of this evidence and the entire record convinces us that there is sufficient evidence to support the trial court's findings regarding the damage sustained by the Prices. These findings, in turn, support the trial court's determination that their damages were $259,535.

■ Kitsap Transit also assigns error to the trial court's conclusion that Bradley Lanchester, a 4-year-old, was incapable of negligence as a matter of law. Washington courts recognize a conclusive presumption that a child under the age of 6 is incapable of negligence. *Seholm v. Hamilton*, 69

Wn.2d 604, 608, 419 P.2d 328 (1966). Furthermore, a "child under 6 years of age is incapable of being contributorially negligent . . .". *Griffin v. Gehret*, 17 Wn. App. 546, 553, 564 P.2d 332 (1977) (citing *Graving v. Dorn*, 63 Wn.2d 236, 238, 386 P.2d 621 (1963)); *see also Bauman v. Crawford*, 104 Wn.2d 241, 244, 704 P.2d 1181 (1985). It is undisputed that Bradley Lanchester was under 5 years old on March 4, 1987. The trial court's conclusion was correct.

Kitsap Transit has assigned error to the trial court's holding a reasonableness hearing on the Lanchester settlement, pursuant to RCW 4.22.060(1). It argues that the reasonableness determination in this case is of no consequence because Kitsap Transit is severally liable for its own proportionate fault.[3]

Because the statute mandates that a "hearing shall be held on the issue of the reasonableness of the amount to be paid", the trial court was not in error when it held such a hearing.

## II
### PRICES' APPEAL

The Prices have assigned error to the trial court's finding that Bradley Lanchester contributed to their damages and to its conclusions that Bradley was 80 percent at fault, but immune from liability. Kitsap Transit assigns error to the trial court's failure to find that Nelson Lanchester and his son Bradley caused 100 percent of Prices' damages.[4] These assignments of error call upon us to interpret former RCW 4.22.070. It reads as follows:

---

[3]*See* Harris, *Washington's 1986 Tort Reform Act: Partial Tort Settlements After the Demise of Joint and Several Liability*, 22 Gonz. L. Rev. 67, 115 (1986-1987), advocating an amendment to RCW 4.22.030 because there is no need for a "reasonableness hearing" in situations like this one, where the claimant is faultless and the "proportionate reduction in the injured person's claim is automatic and an inherent part of the liability rule".

[4]We have chosen to deal with this assignment of error in this section of this opinion because it, like the Prices' assignment of error, involves apportionment of fault to Bradley.

(1) In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages, including the claimant . . ., defendants, third-party defendants, entities released by the claimant, entities immune from liability to the claimant and entities with any other individual defense against the claimant.

RCW 4.22.015 defines fault as follows:

"Fault" includes acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim. The term also includes breach of warranty, unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

■ Under the plain language of the statute the term "fault" is defined as acts or omissions which are negligent or reckless. Negligence incorporates the concept of fault. *See Clark v. Payne*, 61 Wn. App. 189, 193, 810 P.2d 931, *review denied*, 117 Wn.2d 1022 (1991). In our judgment, a child under 6 years of age, who is legally incapable of negligence, is also incapable of being at "fault" as that term is used in RCW 4.22. A contrary holding would permit a trial court to apportion fault to a child who is incapable of negligence, thereby allowing defendants to raise a defense of "comparative fault" in order to reduce their liability to youthful plaintiffs when the defense of "contributory negligence" is not available to that defendant as a matter of law.

Moreover, we recognize that "proximate cause" is a legal concept based on policy considerations. RCW 4.22.015 provides, in part, that "[l]egal requirements of causal relation apply both to fault as the basis for liability and to contributory fault." Entities legally incapable of negligence are incapable of contributing in terms of legal causation and cannot be at "fault".

Kitsap Transit argues that the trial court properly allocated fault to Bradley because, although Bradley cannot be held liable for negligence, he can nonetheless behave in a

way which can be characterized as negligent. *See Seholm v. Hamilton*, 69 Wn.2d at 608; *Barber v. Reinking*, 68 Wn.2d 139, 144, 411 P.2d 861 (1966); *Wooldridge v. Pacific Coast Coal Co.*, 22 Wn.2d 314, 155 P.2d 1001 (1945). It asserts that the rationale for holding that a child cannot be contributorially negligent no longer exists because contributory negligence is no longer a complete bar to recovery.

We recognize that evidence of a child's behavior, which could otherwise be characterized as negligent, may be admissible if it is relevant in determining whether a *defendant* breached a standard of care. The law of Washington remains, however, that a child under the age of 6 cannot be negligent.

Kitsap Transit also argues that the trial court correctly apportioned fault to Bradley because a 4-year-old child is analogous to an employer who is immune from negligence claims of employees under RCW 51.04.010. Our Supreme Court has held that an employer's "fault" must be considered even though the employer cannot be held to be liable for its negligence that damages an employee. *Clark v. Pacificorp*, 118 Wn.2d 167, 822 P.2d 162 (1991). Thus, Kitsap Transit argues, because the statute plainly states that the "fault" of "immune" parties shall be determined, Bradley's fault likewise must be determined in the allocation.

The flaw in Kitsap Transit's argument is that an employer is capable of negligence, thus, capable of fault, but nonetheless immune from employee claims. A 4-year-old, however, is incapable of negligence, thus incapable of fault, rather than immune from claims.[5] Because Bradley is not capable of fault, the trial court erred in apportioning fault to him under former RCW 4.22.070.[6]

---

[5] The Washington State Trial Lawyers Association (WSTLA), in an amicus curiae brief, discusses the difference between "immunity" and "incapacity". Although the practical effect of immunity or incapacity may be the same, incapacity reflects an inability to act tortiously and immunity reflects a social policy to excuse tortious activity.

[6] Kitsap Transit also argued that Bradley was (1) an entity with an "individual defense", and (2) an entity "released by the claimant". An individual defense would logically only be applicable to a party who had the potential for liability.

The Prices also assign error to the trial court's conclusions that judgment could only be entered against Kitsap Transit severally.[7] RCW 4.22.070 reads as follows:

(1) . . . Judgment shall be entered against each defendant except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages. The liability of each defendant shall be several only and shall not be joint except:

. . . .

(b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants [sic] total damages.

(2) If a defendant is jointly and severally liable under one of the exceptions listed in subsections (1)(a) or (1)(b) of this section, such defendant's rights to contribution against another jointly and severally liable defendant, and the effect of settlement by either such defendant, shall be determined under RCW 4.22.040, 4.22.050, and 4.22.060.

The trial court found that Carl Price was without fault. Basing their argument on that finding, the Prices contend that RCW 4.22.070(1)(b) provides that Kitsap Transit is jointly and severally liable for the sum of the proportionate shares (100 percent), because the Lanchesters and Kitsap Transit are "defendants against whom judgment is entered." Furthermore, they rely on RCW 4.22.070(2) and assert that the effect of the Lanchesters' pretrial settlement must be determined under RCW 4.22.060.

RCW 4.22.060 reads as follows:

(2) A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable

---

Kitsap Transit's contention that Bradley was an entity "released by the claimant" is true; however, the trial court still erred by apportioning "fault" to Bradley, who is an entity that is incapable of negligence.

[7]The trial court determined that under RCW 4.22.070, Kitsap Transit was 10 percent at fault, and accordingly the court indicated that Kitsap Transit would be liable, severally, for 10 percent of Prices' damages.

upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

According to the Prices, Kitsap Transit would be liable for the full judgment of $259,535, minus the $3,000 which the Prices obtained when they settled with the Lanchesters before trial and which was initially determined to be a reasonable settlement. We disagree.

Our Supreme Court recently determined that "settling, released defendants do not have judgment entered against them within the meaning of RCW 4.22.070(1), and therefore are not jointly and severally liable defendants." *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 294, 840 P.2d 860 (1992). The trial court correctly concluded that under RCW 4.22.070, Kitsap Transit was liable for a percentage of the Prices' damages corresponding to the percentage of fault attributable to Kitsap County.

Accordingly, the case is remanded for new apportionment of fault findings under RCW 4.22.070 due to the trial court's erroneous apportionment of fault to Bradley Lanchester. In all other respects the trial court is affirmed.

PETRICH and SEINFELD, JJ., concur.

Review granted at 123 Wn.2d 1001 (1994).