[No. 60743-5. En Banc. December 15, 1994.]

CARL W. PRICE, ET AL, *Respondents*, v. KITSAP TRANSIT, *Petitioner*.

*Gierke, Curwen, Metzler & Erie,* by *Leigh D. Erie; Richard R. Stocking,* for petitioner.

*Randy W. Loun* and *Coons & Loun,* for respondents.

*Andrew G. Cooley* on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioner.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondents.

UTTER, J. — Plaintiffs Carl Price and his wife brought suit against Defendant Kitsap Transit for injuries Mr. Price sustained while he was a passenger on a bus owned by Kitsap Transit. The trial court assigned fault for Mr. Price's injuries to three parties as follows: 10 percent to Kitsap Transit; 80 percent to a 4-year-old passenger; and 10 percent to the father of the 4-year-old passenger. Holding the trial court improperly assigned fault to a 4-year-old child, the Court of

Appeals reversed the trial court decision and remanded to the trial court for reapportionment of fault. We accepted Kitsap Transit's Petition for Review pursuant to RAP 13.4, and affirm the Court of Appeals. On May 20, 1986, while Carl Price was a passenger on a Kitsap Transit bus, the bus was hit from behind by another Kitsap Transit bus. As a result of the accident, Price suffered whiplash injuries. On March 4, 1987, Price was again riding on a Kitsap Transit bus. Two other passengers, Nelson Lanchester and his 4-year-old son, Bradley, approached the front of the bus while it was still moving. Although his father was holding his right hand, Bradley's left hand was free. With his left hand, Bradley reached over into the driver area from the passenger area, and unexpectedly engaged an emergency stop switch. The bus stopped abruptly, aggravating Price's prior injuries. Shortly thereafter, and allegedly as a result of the March 4 accident, Price took an early retirement from his job as a welder.

Price and his wife later brought actions against Kitsap Transit in connection with the 1986 incident, and against Kitsap Transit and the Lanchesters in connection with the 1987 incident. Price and his wife reached an out-of-court settlement with Kitsap Transit regarding the 1986 incident.

Prior to trial for the 1987 incident, the Prices settled with the Lanchesters for $3,000. As part of the settlement, the parties appeared before the trial judge for a "reasonableness" hearing.[1] The judge determined the settlement was reasonable and subsequently dismissed the case against the Lanchesters. The suit against Kitsap Transit proceeded to trial. There, the court found Price's total damages resulting from the March 4, 1987, accident to be $259,535. Clerk's Papers, at 110. This figure included lost wages, loss of consortium, and medical costs.

In determining what percentage of this total amount to attribute to Kitsap Transit, the trial court found Bradley

---

[1]RCW 4.22.060(1) requires a party seeking settlement to secure a determination by the court that the settlement amount is reasonable before that party is permitted to settle.

caused 80 percent of Price's damages, but that he was "immune" from liability; found Nelson Lanchester's negligence to have caused 10 percent of the damages; and found Kitsap Transit's negligence to have caused 10 percent of Price's damages. Clerk's Papers, at 110-11. The trial court ordered Kitsap Transit to compensate, in accordance with its share of fault, the Prices $25,953.50 (*i.e.*, 10 percent of the total damages).

The Prices appealed to the Court of Appeals, Division Two, contending the trial court erred in assessing a percentage of fault to Bradley because he was a child under 6 years old. Kitsap Transit cross-appealed, contending the trial court erred in finding Kitsap Transit negligent, in holding that a child under 6 years old is capable of negligent conduct but is immune from liability, and in assessing total damages at $259,535. The Court of Appeals ruled in favor of the Prices on all of these issues. *Price v. Kitsap Transit*, 70 Wn. App. 748, 856 P.2d 384 (1993). It held there was sufficient evidence supporting both the determination that Kitsap Transit was negligent and the amount of damages. It further held the trial court erred in apportioning a percentage of "fault" to Bradley since Bradley was incapable of "fault" as a child under 6. Accordingly, it remanded the case for reapportionment of fault between Kitsap Transit and Nelson Lanchester.

Kitsap Transit petitioned for review by this court, contending that RCW 4.22.070 allows and expressly contemplates the apportionment of "fault" to 4-year-old children. It also argues the evidence does not support the finding that Kitsap Transit was negligent; and the evidence does not support the trial court's determination as to total damages. The Prices appear to argue the trial court was bound by the findings of the reasonableness hearing to find the Lanchesters responsible for $3,000 or less of the Prices' damages, and, by implication, Kitsap Transit liable for the balance of the total damages. We accepted review pursuant to RAP 13.4 and affirm the Court of Appeals.

### A 4-Year-Old Child Is Not An "Entity" to Which Fault Can Be Apportioned Under RCW 4.22.070(1)

The tort reform act of Washington requires the trier of fact to determine the percentage of total fault for any injury attributable to:

> every *entity* which caused the claimant's damages, including the claimant or person suffering personal injury or incurring property damage, defendants, third-party defendants, entities released by the claimant, entities immune from liability to the claimant and entities with any other individual defense against the claimant. . . .

(Italics ours.) RCW 4.22.070(1). To determine whether the trial court properly assigned 80 percent of the total fault for Price's injuries to Bradley, a 4-year-old, we must determine the proper meaning of "entity".

 Based on the express language of the tort reform act, we conclude an "entity", as that term is used in RCW 4.22.070(1), must be a juridical being capable of fault. *Cf.* Cornelius J. Peck, *Washington's Partial Rejection and Modification of the Common Law Rule of Joint and Several Liability*, 62 Wash. L. Rev. 233, 243 (1987). Since RCW 4.22.070(1) is applicable "[i]n all actions involving *fault* of more than one entity . . .", it would be inappropriate to inquire as to the amount of fault which should be attributed to a party if such party is incapable of fault as a matter of law. (Italics ours.) This interpretation agrees with the fundamental practice of not assigning fault to animals, inanimate objects, and forces of nature which are not considered "entities" under RCW 4.22.070(1).

To determine whether a 4-year-old child is capable of "fault", the statutory definition of "fault" must be considered. On the facts of this case, "fault" must be given the meaning of:

> acts or omissions . . . that are in any measure negligent or reckless toward the person or property of the actor or others . . ..

RCW 4.22.015.

We have previously held children under 6 do not have the mental capacity to be negligent. *Von Saxe v. Barnett*, 125

Wash. 639, 217 P. 62 (1923). As this court noted in *Von Saxe*, "[At 5 years 4 months] a child is a creature of impulse and impetuosity. It has no habits of deliberation and forethought". 125 Wash. at 645. This conclusion is frequently cited and has remained undisturbed. *See, e.g., Bauman v. Crawford*, 104 Wn.2d 241, 244, 704 P.2d 1181 (1985); *Graving v. Dorn*, 63 Wn.2d 236, 386 P.2d 621 (1963); *Seholm v. Hamilton*, 69 Wn.2d 604, 608, 419 P.2d 328 (1966); *Griffin v. Gehret*, 17 Wn. App. 546, 553, 564 P.2d 332 (1977).

The underlying rationale in holding that a child under 6 lacks the capacity to be negligent extends to recklessness as well: a child who is under 6 does not have the mental capacity to comprehend a duty to exercise a standard of care. *See also* W. Page Keeton et al., *Prosser and Keeton on Torts* § 31, at 170 (5th ed. 1984) (recklessness is a class of negligence). A 4-year-old child cannot be an "entity" under RCW 4.22.070(1), and the trial court erroneously assigned a portion of the total fault to Bradley.

Kitsap Transit makes several arguments against this interpretation of "entity". All are unpersuasive. First, Kitsap Transit notes the statutory use of the term "entity" includes defendants, entities released by the plaintiffs, entities immune from liability to the plaintiffs, and entities with an individual defense against the plaintiffs' claims. *See* RCW 4.22.070(1). It argues that because Bradley falls into each of these categories, he must be considered an "entity" under RCW 4.22.070(1). This argument is without merit. Animals, inanimate objects, and forces of nature may fall into these categories, yet we reject the notion that the assignment of fault to these entities is proper.

Another related argument made by Kitsap Transit is based on the trial court's erroneous conclusion that because a 4-year-old is incapable of negligence, he is "immune" from liability. Clerk's Papers, at 112. In essence, Kitsap Transit contends the statute's express intent to include "immune entities" as entities to which fault may be assigned is thwarted by not considering Bradley an "immune entity" to which fault must be assigned. This argument confuses the

concepts of immunity and incapacity. Juridical beings *capable* of fault, but excused for policy reasons from incurring liability, are conceptually distinct from beings or objects *incapable* of fault. W. Page Keeton et al., *Prosser and Keeton on Torts* § 131, at 1032 (5th ed. 1984) (immunity differs from notion that person's conduct is not tortious at all), § 134, at 1071-72 (infants escape liability not because of immunity but because they lack mental capacity to commit a tort). The distinction between the two concepts is borne out by the fact that none of the entities enumerated in RCW 4.22.070(1) is an entity incapable of fault.

Kitsap Transit also asks us to abandon our conclusive presumption against finding children under 6 capable of negligence. As support, Kitsap Transit cites cases from other jurisdictions which have held the issue whether children under 6 are capable of negligence is a factual inquiry. We are unconvinced. None of the cases cited by Kitsap Transit are binding on this court, nor do they address the situation of a child under 5. Furthermore, rejection of the conclusive presumption for children under 6 would subject vulnerable and very young children to the awkward position of their own relatives attempting to prove their stupidity or lack of knowledge. Opening this issue to litigation would also create an evidentiary morass since the capacities of young children change rapidly and evidence could be unreliable. Children under the age of 6 have limited mental capacities. Imposing on such youngsters a responsibility to exercise a standard of care, deviation from which would be considered a breach of duty, would be an imprudent departure from well-established case law.

Kitsap Transit claims further there is no legislative indication the Legislature meant to exclude children under 6 from its definition of "entity". To the contrary, the Legislature is presumed to know the existing state of the case law in those areas in which it is legislating and a statute will not be construed in derogation of the common law unless the Legislature has clearly expressed its intention to vary it. *See Woodson v. State*, 95 Wn.2d 257, 623 P.2d 683 (1980); *Irwin*

*v. Rogers*, 91 Wash. 284, 157 P. 690 (1916); *see also* 6 Wash. Prac., *WPI* § 11.03 cmt. (3d ed. 1989). By limiting the apportionment to entities capable of fault, the Legislature intended to exclude children under the age of 6 from being considered an "entity" under RCW 4.22.070(1).

Finally, Kitsap Transit argues children under 6 are capable of "fault" as the term is used in RCW 4.22.070 because they may be held liable for volitional, tortious conduct. Children under 6 may be held liable for volitional, wrongful conduct. *Garratt v. Dailey*, 46 Wn.2d 197, 279 P.2d 1091 (1955). However, intentional torts are part of a wholly different legal realm and are inapposite to the determination of fault pursuant to RCW 4.22.070(1). We noted in *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 795 P.2d 1143 (1990) "[t]he definition [of fault as used in RCW 4.22.015] is intended to encompass all degrees of fault in tort actions *short of intentionally caused harm . . .*". (Italics ours.) *Schmidt*, at 161 (quoting Senate Journal, 47th Legislature (1981), at 635). Therefore, our conclusion that children are incapable of "fault" for purposes of RCW 4.22.070(1) is not inconsistent with *Garratt v. Dailey, supra.*

For these reasons, we conclude children under 6 years of age are incapable of fault as that term is used in RCW 4.22.070(1) and are not "entities" to which fault may be apportioned under the statute.

### The Trial Courts Finding That Kitsap Transit Was Negligent Is Affirmed

█ Appellate review of this issue is limited to whether the findings are supported by "substantial evidence" and whether those findings support the conclusions of law and judgment. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978). "Substantial evidence" is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 816 P.2d 18 (1991), *cert. denied*, 112 S. Ct. 1672 (1992).

The evidence presented at trial shows there was a backup driver on the bus. The backup driver is a driver employed by Kitsap Transit whose responsibilities include acting as the driver's assistant, Verbatim Report of Proceedings, at 453, taking over the driving duties if the driver is unable to drive, Verbatim Report of Proceedings, at 454, and ensuring that no passengers pass a handrail separating the driver from the passengers while the bus is in movement, Verbatim Report of Proceedings, at 460. This backup driver permitted Bradley to get close enough to the lever that it was impossible for him to stop Bradley once he reached for it. Verbatim Report of Proceedings,[2] at 465. In addition, Kitsap Transit permitted passengers to approach the front of the bus before it completely stopped. Verbatim Report of Proceedings, at 462-63. Finally, Kitsap Transit placed the switch in a place where it could be reached even by children standing behind the line separating the driver area from the passenger area. Verbatim Report of Proceedings, at 473.

As a common carrier of passengers, a bus system owes the highest degree of care toward its passengers commensurate with the practical operation of its services at the time and place in question. *Benjamin v. Seattle*, 74 Wn.2d 832, 833, 447 P.2d 172 (1968). Inasmuch as the factual findings were supported by substantial evidence and support the conclusion that Kitsap Transit breached its duty of heightened care to passengers, we affirm the trial court's finding that Kitsap Transit was negligent.

### THE TRIAL COURTS FINDING OF TOTAL DAMAGES IS AFFIRMED

Appellate review of this issue is also limited to whether the findings of fact are supported by substantial evidence and whether the findings of fact support the trial court's conclusions of law and judgment, *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978); and "substantial evi-

---

[2]Unless otherwise specified, all references to the Verbatim Report of Proceedings refer to the trial commencing December 11, 1989.

dence" is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 816 P.2d 18 (1991), *cert. denied*, 112 S. Ct. 1672 (1992).

The evidence presented at trial in support of the court's finding of total damages includes the following. Mr. Price testified he felt he was improving after the first accident and getting better prior to the accident on March 4, 1987: "I wasn't missing as much work as I had the year before, and I thought I was doing real good". Verbatim Report of Proceedings, at 26. He testified he planned to continue work until he was 65 years old, but chose to take an early retirement after suffering the injuries associated with the second accident. Verbatim Report of Proceedings, at 36. Price's wife supported his testimony, stating that during the time between the two accidents he was getting better. Verbatim Report of Proceedings, at 123-24. She also testified in support of the alleged loss of consortium. Verbatim Report of Proceedings, at 317-18. In addition to the Prices' testimony, Dr. Bergman, a specialist in neurology, testified he treated Carl Price beginning August 24, 1989, Verbatim Report of Proceedings, at 257, and that he recommended that Price retire from welding. Verbatim Report of Proceedings, at 267. Dr. Bergman concluded on a "more probable than not" basis that Price's condition was a result of the March 1987 accident. Verbatim Report of Proceedings, at 268. The report of Price's chiropractor also indicated that Price's condition had seemed to be improving prior to the second accident. Clerk's Papers, at 182-84. Finally, a CPA specializing in financial planning testified that the early retirement caused Price to suffer a loss of $139,263 in present value. Clerk's Papers, at 500.

The above evidence is sufficient to persuade a fair-minded, rational person that Price's current condition was caused by the March 4, 1987, accident and supports the trial court's finding that total damages amounted to $259,535. We therefore affirm the trial court's calculation of total damages.

## The Trial Court Is Not Bound by the Conclusions of a Reasonableness Hearing

The Prices argue the trial court was bound, by the conclusions of the reasonableness hearing, to find the Lanchesters at fault for $3,000 or less of the total damages suffered by the Prices (the implication is that Kitsap Transit should be liable for the balance).[3] This argument is unpersuasive.

The Prices imply the reasonableness hearing found the Lanchesters to be responsible for exactly $3,000 or less of the Prices' injuries. In fact, the reasonableness judge found only that the amount of $3,000 was "reasonable", not that the Prices were responsible for precisely $3,000 or less of the damages. The relative fault of a party is only one of several discretionary factors considered by a court in reaching its determination that a settlement is reasonable. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 795 P.2d 1143 (1990); *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983). Thus, the amount determined to be "reasonable" does not even purport to represent the amount of damages for which a settling defendant is at fault, and we cannot draw any such inference.

The Prices' argument is premised on a fundamental and fatal misapprehension of the role of the reasonableness hearing. The function of the hearing is not to apportion fault to each of the parties causing the injury or determine the liability of such parties, but rather to determine whether, given the facts and law known to the hearing judge, the proposed settlement amount is reasonable. RCW 4.22.060(1) expressly provides:

> A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity

---

[3]The issues we address here include whether a settling defendant's share of the total liability for a plaintiffs injuries can be inferred from findings at a reasonableness hearing and whether the trier of fact is bound to find such defendant responsible for a portion of the plaintiffs damages equivalent to or less than the settlement amount. We do not decide here whether a trial defendant's actual liability (after the trier of fact has independently determined the portion of damages for which the defendant is responsible) should be offset by amounts paid by settling defendants. We have already answered that question in the negative. *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 840 P.2d 860 (1992).

to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. . . .

One of the primary purposes of this hearing is "to protect the nonsettling defendant from paying more than his or her share of damages". *Adams v. Johnston,* 71 Wn. App. 599, 604, 860 P.2d 423 (1993) (citing Senate Journal, 47th Legislature (1981), at 636-37 (Senate Select Comm. on Tort & Prod. Liab. Reform, *Final Report 1981,* commenting on RCW 4.22.060)). By foreclosing the ability of the trier of fact to fully explore and decide the comparative fault of all the various entities which caused the plaintiffs injury, the Prices' approach would, rather than furthering the goal of protecting nonsettling defendants, in fact frustrate that objective.

If we were to accept the Prices' argument the trial court is bound to find the Lanchesters responsible for precisely $3,000 or less of the damages, the trier of fact would, in contravention of the statutory scheme, be dispossessed of either its ability to apportion fault or its ability to determine the amount of total damages. For example, if the trier of fact determined damages to total $600,000, it would be compelled to apportion, at most, 0.5 percent of the total fault to the Lanchesters. Alternatively, if the trier of fact wished to find the Lanchesters to have caused 100 percent of damages, it would be constrained to enter a finding that damages totaled $3,000 or less. This is an absurd outcome and one which renders portions of the act superfluous. We decline to adopt an interpretation of a statute which would produce an absurd result or render a portion of the statute meaningless. *Kirk v. Moe,* 114 Wn.2d 550, 554, 789 P.2d 84 (1990).

Finally, this court in *Washburn v. Beatt Equip. Co.,* 120 Wn.2d 246, 840 P.2d 860 (1992) prohibited the trial court from reducing a trial defendant's liability by amounts already recovered by the plaintiff from settling defendants. *See Washburn v. Beatt Equip. Co., supra* (where trial defendant and settling defendants were not jointly and severally liable); *see also Waite v. Morisette,* 68 Wn. App. 521, 843 P.2d

1121, *review denied*, 122 Wn.2d 1006 (1993). The Prices' approach would permit the trial court to circumvent, at least in part, the rule established by *Washburn*. For instance, if, after a plaintiff recovered $300 from party *A* as part of a pretrial settlement, the trier of fact found total damages to be $1,000, found party *A* to be only 10 percent at fault, and found party *B* to be 90 percent at fault, then, under *Washburn* which proscribes offsets, *B* would be liable to the plaintiff in the full amount of $900, notwithstanding the settlement payment.

In contrast, the Prices' approach would require the trier of fact in this example to start out with the premise that *A* is responsible for $300 of the total damages. The trier of fact would thereby be forced to find *B* liable for only $700 ($1,000 total damages — $300 damages attributable to *A*), rather than the full $900. Since the result of the Prices' approach is the functional equivalent of a partial offset, it is inconsistent with *Washburn*. We will not permit the Prices to achieve through indirection what is expressly proscribed by *Washburn*.

Based on the foregoing reasons, we reject the Prices' contention the trial court was compelled to conclude the Lanchesters were at fault for $3,000 or less of the Prices' total damages.[4]

The decision of the Court of Appeals is affirmed and the case remanded to the trial court. We hereby direct the trial court on remand to determine, consistent with this opinion and notwithstanding the findings of the reasonableness hearing, the proper apportionment of fault.

BRACHTENBACH, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

---

[4]Although irrelevant to our ultimate conclusion, we also note that, in this case, the judge at the reasonableness hearing explicitly recognized the statutory obligation of the trial court to apportion fault independently of the findings of the reasonableness hearing. Verbatim Report of Proceedings (May 15, 1989), at 12.

DURHAM, J. (concurring) — Today's decision requires the trial court to reapportion 100 percent of the fault between two entities, each previously found 10 percent at fault. The tort reform act, which was enacted in part to ensure that liability and fault are equivalent, appears to require this anomalous result. While I reluctantly concur with the majority, I urge the Legislature to review this inequity.

The facts are short and simple. On March 4, 1987, 4-year-old Bradley Lanchester walked to the front of a Kitsap Transit bus while holding the hand of his father, Nelson Lanchester. Somehow, Bradley managed to trigger a well-protected emergency stop switch. The bus, which already was slowing down to allow passengers to disembark, immediately stopped. Carl Price, a passenger, was thrown forward by the sudden stop, which he claimed aggravated his preexisting injuries.

The trial court apportioned 10 percent of the fault to Kitsap Transit, 10 percent to Nelson Lanchester, and the remaining 80 percent to young Bradley. Total damages were assessed at $259,535, of which Kitsap Transit was severally liable for 10 percent.[5]

As the majority discusses at length, the trial court mistakenly apportioned fault to young Bradley. In tort actions to recover damages for injuries, the tort reform act directs the trier of fact to apportion responsibility among all "entities" at fault. RCW 4.22.070(1). The Legislature, in drafting the tort reform act, defined fault in terms of negligence and recklessness. RCW 4.22.015. As a result, the trier of fact cannot apportion fault to individuals whose actions fall outside the legal definition of recklessness or negligence.

We have a long tradition of exempting children under 6 from contributory negligence.[6] *Von Saxe v. Barnett*, 125

---

[5]The Prices settled with Nelson and Bradley Lanchester prior to trial for $3,000, a sum judicially determined reasonable.

[6]There is something inherently distasteful about the majority's likening young children to inanimate objects and forces of nature. Young children, while sometimes unable to exercise appropriate judgment, often can determine right from wrong, and feel regret over their mistakes. Unlike inanimate objects and

Wash. 639, 642-46, 217 P. 62 (1923). By defining fault in terms of negligence, the Legislature effectively precludes a trier of fact from apportioning fault to young children no matter how negligent the behavior.

While the tort reform act attempted to provide a measure of relief to relatively innocent defendants from whom recovery is sought simply because of their ability to pay, this case demonstrates that the goal has not been fully achieved. *See Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 161-62, 795 P.2d 1143 (1990). The trial court apportioned 80 percent of the fault to Bradley, who activated the emergency stop causing Price's injury. Clearly, Bradley was the party most "at fault" in this accident. On remand, the trial court is now faced with the very difficult task of reapportioning fault from an incomplete cast of characters. This apportionment leaves only Kitsap Transit and Bradley's father, Nelson Lanchester.

The settlement agreement reached between the Prices and the Lanchesters prior to the original trial bars the Prices from actually collecting further monetary award from the Lanchesters. Regardless of the trial court's reapportionment of fault between Kitsap Transit and Bradley's father, the Prices will receive an award based only on the percentage of fault attributed to Kitsap Transit. For reapportionment to accurately reflect Kitsap's fault, however, the Prices' settlement agreement with the Lanchesters should not influence the trial court on remand. Under the tort reform act, the trial court must hold Kitsap Transit liable according to the degree of its fault, no more, no less.

While I agree with the majority that there was sufficient evidence supporting a finding of some negligence on the part of Kitsap Transit, there is nothing in the record indicating that Kitsap Transit had any control over, nor any duty to exercise control over, Bradley's actions.

However contrary to the spirit of the tort reform act this result may appear, the tort reform act is a product of the

---

forces of nature, we do not expect young children to be uncontrolled and uncontrollable, and if they are, we do not expect them to remain that way.

472

Legislature, and any misgivings with it must be resolved there. The Legislature is presumed to know the law when drafting statutes. *Woodson v. State*, 95 Wn.2d 257, 262, 623 P.2d 683 (1980). It is for that body to determine whether public policy and fairness require apportionment of fault to all parties, including young children.

ANDERSEN, C.J., concurs with DURHAM, J.