## Allegheny College v. Crump, Inc.

*Rose, Rose & Houston* and *Thomas & Thomas*, for plaintiff.

*Paul, Lawrence & Rock*, for defendant.

RODGERS, P. J., specially presiding, June 26, 1959.— Plaintiff, Allegheny College, and defendant, Crump, Incorporated, entered into a general construction contract dated November 6, 1953, for the erection of the David Meade Field House at the college. The contract, in its entirety, was submitted by stipulation as a part of the record at the trial.

Crump employed David N. Brown & Sons of Bradford as subcontractors to perform the plumbing and heating portions of the general contract. Brown in turn employed Sprinchorn and Company of Jamestown, N. Y., as subcontractors to perform the sheet metal work called for by the heating specifications.

The contract called for the use in the heating ducts of a specific Johns-Manville acoustical material known as Airacoustic. This material was not used.

It was stipulated that on "November 27, 1954, at approximately 11:30 a.m., a fire of unknown origin

occurred in the Field House," primarily in the heating ducts.

When the fire occurred the heating system was being operated by one Charles F. Cargo, with Crump's consent, under an independent contract between the college and Brown for operation of the heating system to supply temporary heat in the field house while the building was under construction.

Under the contract between the college and Crump, the college was required to insure the field house and the materials used in its construction against fire loss and to name Crump as an insured party.

Subsequent to the fire, the college had Crump repair the fire damage amounting to $11,599.44. The college received this amount from its fire insurance carrier in the form of a loan receipt and in turn, paid the identical sum to Crump for the cost of the repairs made by Crump.

The college now sues Crump in assumpsit alleging a material breach of the contract in that defendant failed to use the specified brand of insulation in the heating duct work and that the failure to comply in this regard was the cause of the fire.

Crump defends this action alleging a failure of plaintiff to prove a material breach of the contract and that the college has no cause of action against Crump for fire damage where the college has contracted to purchase and in fact does purchase a fire insurance contract in which Crump is named as an insured.

The court, at the request of counsel, heard the matter without a jury and makes the following finding of facts.

### Findings of Fact

1. Plaintiff is a nonprofit corporation organized and existing under the laws of Pennsylvania, whose address is Meadville, Pa.

2. Defendant is a corporation in the general construction business, organized and existing under the laws of Pennsylvania, whose principal business address is 4031 Bigelow Boulevard, Pittsburgh 13, Pa.

3. On or about November 6, 1953, plaintiff and defendant entered into a written contract for the erection of a field house on the campus of Allegheny College in Meadville, in which defendant agreed to erect said structure as a general contractor and in accordance with plans and specifications prepared by Lorimer Rich & Associates, architects.

4. The written contract required that the acoustical lining in the heating duct work should be "Johns-Manville Airacoustic" sheets.

5. Defendant subcontracted the original duct work in question to one Spinchorn, who did not use Johns-Manville Airacoustic in the duct work.

6. The nature of the lining actually used in the heating duct work is unknown.

7. Airacoustic will not ignite even if exposed to a stream of air at 1,500 degrees fahrenheit.

8. The college entered into a separate contract with Brown to operate the furnaces in the field house for the purpose of supplying temporary heat while construction was in progress.

9. At the time of the fire, the heating system of the field house was under the control, supervision and management of the college.

10. Crump had no responsibility for furnishing temporary heat to the field house on November 27, 1954.

11. Lorenz A. Sieler, Crump's superintendent of construction, was present at the field house each working day prior to the fire and, specifically, on days during which the college was operating the heating units.

12. Crump assented to the operation of the heating unit before it was completely equipped.

13. In accordance with the contract, the college pur-chased fire insurance coverage for the entire structure and named Crump and his subcontractors as insured parties.

14. On November 27, 1954, after the field house was erected and the heating units were installed, but before the installation of the controls was completed and before the structure was turned over to plaintiff as a completed building, a fire occurred.

15. The origin of the fire is unknown but consisted of the vigorous flaming and burning of the lining of the heating duct work.

16. The fire was confined to the heating ducts but resulting smoke damage was extensive throughout the building.

17. If Airacoustic had been used the fire in question would not have occurred.

18. The failure to use Airacoustic was the cause of the fire.

19. After the fire, an oral contract was entered into between the college and Crump for the repair of the damage done as a result of the fire. This damage amounted to $11,599.44.

20. The insurance company paid the college the full amount of the fire loss in the form of a loan receipt.

21. The college paid Crump the exact amount charged by him for the repair work which was the exact amount received from the insurance company.

This then presents two issues. First, was there a material breach of the contract which was the cause of plaintiff's loss? Second, if the first question is answered in the affirmative, may the college recover from Crump for this fire loss when the college was required to insure against the risk of fire and to name Crump as an insured party?

Plaintiff has proved a breach of an expressed condition of the contract and has produced convincing evi-

dence that the loss would not have occurred if the contract had been complied with. This, at the very least, requires defendant to prove that the substituted materials were equal in quality to those used: Follansbee Brothers Company v. Garrett-Cromwell Engineering Company, 48 Pa. Superior Ct. 183, 190; and Hook v. Welch, 67 Pa. Superior Ct. 297, 300. This defendant failed to do.

### Conclusions of Law

1. We therefore conclude that the use of substituted acoustical materials was a material breach of the contract.

2. This breach of the contract was a proximate cause of the loss to plaintiff.

There remains the question of whether plaintiff may recover where he has contracted to secure insurance against a fire loss and to name defendant as one of the insured, where the loss involved was caused by defendant's material breach of his contract.

Defendant would negative this point and contends that protection from such an action was the specific purpose of the contractual provision requiring the college to cover him with insurance. Plaintiff replies that this would be true in any instance except where the fire was caused by defendant's breach of contract and contends that we should find an intent that the party was not covered in the event of such a loss. Plaintiff argues that a contrary holding would tend to encourage deliberate, wanton, willful breaches of the contract and even suggests that an unscrupulous contractor might by design, create a series of fire hazards in order that fires would be started causing damages to the building in order that he might bid for the repair of these damages and thus keep the construction job in process ad infinitum.

We are not impressed by this argument. The type of activities suggested by plaintiff might well consti-

tute deliberate destruction by fire which would certainly not be covered by the insurance contract and if the insurer desires to except from coverage fires caused by wanton, deliberate or willful breaches of the contract, he may do this by the terms of his contract. In a large construction contract such as the one in the instant case, the general contractor as a matter of actual practice does not have a specific knowledge of each item of material used by his subcontractors. It is one of the risks of the business which he undertakes when he acts as a general contractor.

He could, perhaps, meet this risk in several ways. One contractor might desire to hire inspectors who would inspect each item of material to be certain that his subcontractors met his contractual responsibility.

Another contractor might be willing to accept, in part, the risk involved in subcontracting his work and protect himself, in part, by an insurance contract such as was required in this action.

In this case, the risks involved in this field as far as fire was concerned, were eliminated when plaintiff agreed to take out the necessary insurance and name defendant as one of the insured. The court sees no reason to defeat the obvious intent of this contractual obligation by rewriting the contract for the insurer.

Where an ambiguity exists in an insurance policy, it must be resolved in favor of the insured. Here no ambiguity is present and to concur with plaintiff's position, we would be required to reverse this situation by reconstructing the contract to create an exemption in favor of the insurer: Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394.

3. The requirement of the contract that plaintiff carry fire insurance and name defendant and his subcontractors as insured parties bars plaintiff from recovering from defendant damages resulting from a

fire loss even though the fire loss was caused by defendant's breach of contract.

*Order*

And now, June 26, 1959, the court adopts as a part of this order the findings of fact and conclusions of law set out above and finds for defendant.