[No. 37909. Department One. February 10, 1966.]

GENERAL INSURANCE COMPANY OF AMERICA, *Appellant*, v. STODDARD WENDLE FORD MOTORS, *Respondent.*\*

\*Reported in 410 P.2d 904.

*Morrison & Huppin,* by *D. N. Morrison* and *Robert Ewing,* for appellant.

*Quackenbush, Dean, Beschel & Smith,* by *Jack R. Dean,* for respondent.

HILL, J.—Superficially,[1] this would seem to be a subrogation case with the issue whether the insurance company, as subrogee, had waived its right to recover. The trial court held that there had been such a waiver and dismissed the action.

Stoddard Wendle Ford Motors, a corporation (hereinafter called Stoddard-Wendle), sold a truck to W. H. Findley (hereinafter called Findley) for use in his logging operations in Idaho. To meet the purchaser's requirements of a 212-inch wheel base, the truck, which had a wheel base of 191 inches, was lengthened by cutting the body and welding in an additional section.

The vendor's interest in the conditional sales contract covering the truck (dated May 3, 1960) was assigned to Pacific Finance Corporation (hereinafter called Pacific) and, later, reassigned to Stoddard-Wendle. The insurance required by the contract was procured by Findley from the General Insurance Company of America (hereinafter called General) and named Pacific as the loss-payee. Findley never made any payment on the truck, other than the down payment, and his equity was never sufficient to entitle him to any part of the loss subsequently paid by General.

On August 1, 1960, while the truck carrying a tractor belonging to Findley was going up a grade, the weld sepa-

---

[1]We say "superficially" because we ultimately conclude that the situation is not what it seems to be. We arrive at the same end result (*i.e.,* the dismissal of the action), but for a different reason.

rated and the truck, together with the tractor it was carrying, went over an embankment with resultant heavy damage. We assume, for the purposes of this opinion, that, as alleged by General, the welding by Stoddard-Wendle was "negligently and ineffectually" done, otherwise General has no cause of action.

The truck was repossessed by Stoddard-Wendle by virtue of a repossession action which it started against Findley in Idaho in early June, 1961. By stipulation of the parties on June 15, 1961, the possession of the truck, then in the possession of the Sheriff of Nez Perce County, Idaho, was surrendered to Stoddard-Wendle. The stipulation provided that "Such truck shall be and remain the property of the plaintiff to do with as it sees fit." It was brought to Spokane and repaired at a cost of $7,124.

This amount, less the $250 deductible, i.e., $6,874, was paid by General October 20, 1961. The check was made payable to Pacific (the designated loss payee in the policy) and to Inland Truck & Diesel, which had made the repairs. The latter received the entire amount. Stoddard-Wendle, which then owned and had possession of the truck, paid the $250 deductible.

Stoddard-Wendle, in its repossession action against Findley, had also claimed damages; and Findley had, in his amended answer, made a claim for some $18,000 against Stoddard-Wendle for damages caused by the defective weld which had caused the truck to go off the road and down the embankment. The damages he claimed were to his tractor, which was being carried by the truck at the time of the accident, and for loss of use of the truck and tractor. (No damages were claimed for damage to the truck—General having paid for the necessary repairs, except the $250 deductible which Stoddard-Wendle had paid.) The stipulation, which restored ownership and possession of the truck to Stoddard-Wendle, provided that the taking of possession by Stoddard-Wendle "shall not be construed as a waiver by either the plaintiff or the defendants of any right to damages accrued or accruing in this cause."

The Idaho action was finally compromised June 29, 1962, by Stoddard-Wendle paying Findley $3,500. The action by Stoddard-Wendle, and Findley's action by cross-complaint for damages were both dismissed. Each party released all claims against the other for any damages arising out of the transaction between them.

The present action by General, as subrogee of Findley or Pacific, was commenced August 9, 1962, against Stoddard-Wendle as a third-party tort-feasor, to recover the $6,874 paid for repairs to the truck which had been damaged by reason of its defective weld.

The defense was that General had waived its right to claim subrogation by failing to intervene in the Idaho action, which had been commenced by Stoddard-Wendle but in which Findley, by cross-complaint, asked for damages caused by the defective weld. This action was terminated by a settlement in which Findley gave Stoddard-Wendle a release of all claims arising from any negligence.

It was established that General had notice of the Idaho action; and the trial court, in the present action, held that General had waived its right to sue Stoddard-Wendle when it failed to intervene in the Idaho action, even though Findley was not in that action asking for damages to the truck. The trial court found that General, by its failure to intervene in the Idaho action, had waived its right to subrogation and dismissed the action. General appeals.

The right of an insurer, which has paid a loss under its policy, to be subrogated to the rights of the insured (or the loss payee) against a wrongdoer responsible for the loss, is clear. However, subrogation is an equitable right and will be enforced or not according to the dictates of equity and good conscience. It arises independently of contract provision. *Powers v. Calvert Fire Ins. Co.,* 216 S. C. 309, 57 S.E.2d 638, 16 A.L.R.2d 1261 (1950).

There is a substantial body of law developing which indicates that a settlement by a tort-feasor and the insured, with an accompanying release made with the knowledge of the tort-feasor that the insurer has paid that portion of the loss for which it was liable, does not defeat the insurer's

claim to subrogation against the tort-feasor. See cases collected under § 5(a), beginning at page 124 of 92 A.L.R.2d (part of an Annotation on "Rights and remedies of property insurer as against third-person tortfeasor who has settled with insured" p. 97).

We are agreed that the trial court properly dismissed the action by General. However, we have serious doubts whether such a compromise settlement between Findley and Stoddard-Wendle, if the latter were a third-party tortfeasor, could enable it to avoid liability to General for the damage. Certainly Stoddard-Wendle knew that General had paid $6,874 for repairs on the truck.

Nor are we convinced that General lost or waived any rights by failing to intervene in the Idaho action between Findley and Stoddard-Wendle. That action was terminated by a settlement and a stipulated judgment. The Supreme Court of Michigan in *Wolverine Ins. Co. v. Klomparens,* 273 Mich. 493, 497, 263 N.W. 724 (1935), points out, under similar circumstances, that

> The doctrine [splitting of causes of action] can have no application to settlements. There is no good reason why parties may not settle any part of a controversy upon which they may reach agreement and leave the controverted part for litigation. . . . By the settlement, made with full knowledge, defendants acquiesced in the splitting of the causes of action.

See, to the same effect, *Omaha & Republican Valley Ry. v. Granite State Fire Ins. Co.,* 53 Neb. 514, 73 N.W. 950 (1898).

These, however, are issues on which we prefer to pass when they are raised between the insurer and a third-party tort-feasor. We do not believe Stoddard-Wendle is a *third-party* tort-feasor.

It seems clear to us, under the record here made, that the insurance in this case was at all times maintained for the benefit of Stoddard-Wendle. It was Stoddard-Wendle's contract with Findley which required Findley to procure the insurance. It was Stoddard-Wendle that received

the benefit of the insurance (payment for the repairs to the truck then in its possession).

While Pacific was named as loss-payee, it is clear that Pacific was no more than the agent for Stoddard-Wendle. Stoddard-Wendle unconditionally guaranteed that Pacific would sustain no loss by reason of any conditional sales contract assigned it by Stoddard-Wendle. It was Stoddard-Wendle that repossessed the 1960 Ford truck, after the accident, and had it brought to Spokane for repairs. It was Stoddard-Wendle that paid the $250 deductible to complete the payment on the repair bill on the truck. It was in Stoddard-Wendle's action to repossess the truck[2] that Findley, in his amended answer, asked for damages because of the defective welding of the truck by Stoddard-Wendle.

Within a few days after that action was started, the parties stipulated that the 1960 Ford truck, which was then in the possession of the Sheriff of Nez Perce County, Idaho, might be delivered to Stoddard-Wendle to be its property "to do with as it sees fit," and reserved for determination at the trial all claims for damages made therein by either party. The repairs were made thereafter and the insurer paid therefor (for the benefit of Stoddard-Wendle).

We are satisfied that Pacific was, under the circumstances, no more than the agent of Stoddard-Wendle and that the loss-payable clause in the insurance policy was for the actual benefit of Stoddard-Wendle.

General, itself, recognized this, as shown by exhibit No. 24, a notice cancelling the insurance policy (dated April 10, 1961) which was sent by General to Stoddard-Wendle, in

---

[2]If there was an earlier repossession proceeding in February, 1961, the parties ignore it. The only reference to it comes from exhibit No. 10, an affidavit of February 13, 1961, by Marie Jacobson, in which she says that she is the "Repossession Clerk of the Pacific Finance Corporation," and that "we are the lawful owner" of the 1960 Ford truck here in question, and certifies "that we have lawfully repossessed" that truck "on the 7th day of February, 1961 from W. H. Findley."

Asked concerning this exhibit, Keith Cochran of Pacific Finance Corporation testified that the statement therein that Pacific was the lawful owner was not true, and said: "We are the agent for Stoddard-Wendle in this particular case."

which Findley and Stoddard-Wendle were both listed as named insureds and Pacific as mortgagee or loss payee.

█ Conceding that the negligence of Stoddard-Wendle caused the accident which occasioned the loss, the insurance was for its benefit, and it cannot be liable to the insurance company as a third-party tort-feasor. Stoddard-Wendle was never a "third party," but always a party beneficially interested in the insurance.

Cases in which an insurance company attempts to recover, as a subrogee, against a party for whose benefit the insurance was written and whose negligence has occasioned the loss, are concededly rare, but there are some (mostly in the field of builder's risk insurance). The courts have consistently held, in the builder's risk cases, that the insurance company—having paid a loss to one insured—cannot, as subrogee, recover from another of the parties for whose benefit the insurance was written even though his negligence may have occasioned the loss, there being no design or fraud on his part. *Allegheny College v. Crump, Inc.*, 21 Pa. D. & C. 2d 207 (1959); *Glens Falls Ins. Co. v. Globe Indem. Co.*, 214 La. 467, 38 So. 2d 139 (1948); *Louisiana Fire Ins. Co. v. Royal Indem. Co.* 38 So. 2d 807 (La. App. 1949). See Annotation: "Builder's risk insurance policies," § 21, Subrogation, 94 A.L.R.2d 221, 264-65.

In the last cited case, the court says, speaking of the *Glens Falls Ins. Co.* case, *supra*:

> The Supreme Court considered the rule too well established to require citation of authorities that an insurance company, which has paid a claim and taken a subrogation, has no right of action against a co-insured of the subrogor, even though the fire loss may have been caused by the negligence of the co-insured, and provided, of course, as is true in the case before us, that there is no design or fraud on the part of defendant. (*Louisiana Fire Ins. Co. v. Royal Indem. Co., supra.*, p. 810)

"Co-insured," as therein used does not apply only to named insureds, but to all for whose benefit the insurance was written.

The judgment of dismissal appealed from is approved.

FINLEY, OTT, and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.

April 14, 1966. Petition for rehearing denied.