[No. 15260-6-II. Division Two. March 22, 1994.]

JOHNNY'S SEAFOOD COMPANY, *Respondent,* v. THE CITY
OF TACOMA, *Appellant.*

*Lawrence Ross,* for appellant.

*John E.D. Powell, Stephen P. Larson,* and *Stafford Frey Cooper & Stewart,* for respondent.

HOUGHTON, J. — Johnny's Seafood Company (Johnny's) leased property from the City of Tacoma (the City). Johnny's sued the City and its contractors for property damage caused by a City construction project. The City counterclaimed that Johnny's breached its lease by failing to comply with certain lease provisions pertaining to insurance. The City appeals

from a trial court decision in favor of Johnny's and its insurer. We affirm.

## FACTS

In 1975, Johnny's entered into a 15-year lease agreement with the City for property located at 1199 Dock Street in Tacoma. The lease included an option to renew for three successive 5-year terms. The lease also authorized Johnny's to make improvements to the property, but granted the City a reversionary interest in any improvements. Johnny's erected a building on the property and carried on a business as a seafood retailer.

The lease agreement obligated Johnny's to buy two types of insurance coverage, including:

> sufficient insurance to protect the structures now existing or as may be added to the premises, from loss by fire or other causes, which are usually covered in a standard form fire policy with extended coverage for perils, vandalism and malicious mischief. . . . [T]he Lessee shall further carry a policy of public liability insurance . . ..

The lease also required that the City be named as an "additional insured" on the policies.

Johnny's did not purchase the insurance called for by the lease. Instead, Johnny's purchased a business premises insurance policy, commonly referred to as an "all-risk" policy. That policy was purchased from Home Insurance Company (Home) and provided broader coverage than was required by the lease. The all-risk policy granted subrogation rights to Home as the insurer. Due to Johnny's oversight, the City was not named as an additional insured on the all-risk policy.

In 1984, the City and its contractors commenced a construction project on the East 15th Street Bridge in Tacoma. Although the project was not on Johnny's leased premises, it allegedly caused damage to the leased premises. According to Johnny's, "the damage was caused by differential settlement of the structure resulting from fill placement and the use of a vibratory compactor".

Johnny's filed suit against the City and its contractors. The City denied liability. It also counterclaimed against Johnny's for failing to purchase the insurance called for in the lease, and for failing to name the City as an additional insured.

The only claim involved in this litigation is a subrogation claim brought in Johnny's name against the City by Johnny's insurer, Home Insurance. The City has settled with Home for $200,000. However, it has agreed to pay Home only $50,000, with determination of responsibility for the remaining $150,000 to abide the outcome of this litigation.

The trial court found for Johnny's and its insurer. The City appeals, claiming that: (1) The insurer's subrogation claim is barred by Johnny's failure to comply with the terms of the lease; (2) such claims cannot be brought against a co-owner of the insured property or against the lessor of the named insured; and (3) the trial court's findings are not supported by substantial evidence.

## ISSUES

1. Are the trial court's findings of fact and conclusions of law supported by substantial evidence?

2. When a commercial tenant fails to comply with the terms of its lease, is its insurer barred from asserting a subrogation claim against the landlord for the landlord's negligence?

## ANALYSIS

### I. Findings of Fact and Conclusions of Law

The City contends that findings of fact 4, 5, and 11 and conclusions of law 2, 4, and 5 are not supported by credible evidence. Specifically, the City argues that the challenged provisions, to the extent they purport to state what insurance coverage the parties intended to have, are not supported by the record.

We review findings of fact to determine if they are supported by substantial evidence and whether the findings, in turn, support the conclusions of law and the judg-

ment. *See Price v. Kitsap Transit,* 70 Wn. App. 748, 752, 856 P.2d 384 (1993), *review granted,* 123 Wn.2d 1001 (1994); *see also Holland v. Boeing Co.,* 90 Wn.2d 384, 390, 583 P.2d 621 (1978). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. *See Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 819, 828 P.2d 549 (1992). The challenged findings provide that:

4. The . . . language employed . . . in the lease agreement contemplated the Standard Form Fire Insurance coverage as set out in the form that the State of Washington has adopted, *i.e.,* the 1943 New York Standard Fire Insurance Policy, known as Form MP-51. . . .

5. The extended coverage for perils endorsement described in the lease contemplated Form CF 1001. . . .

. . . .

11. Had Johnny's purchased the all risk policy and requested its insurer to add the City as a named insured, the City would have been named an additional insured but the general practice in the industry is that the City would have been added only for those risks required under the lease.

The challenged conclusions provide that:

2. Paragraph 8 of the lease agreement requiring Johnny's to purchase certain insurance naming the City [as] an additional insured does not apply to the City's conduct outside the scope of the lessee-lessor relationship. It is clear from the record . . . that the parties' intent was to allocate the risks between themselves as set out in the lease agreement and they were not allocating any other risks. The lease did not intend to allocate between Johnny's and the City and to Johnny's insurers the risk of loss to the property wholly unrelated to the lessor/lessee relationship, which loss was occasioned by the City, a third party who just happened to be a lessor.

. . . .

4. The instant loss is not a covered loss or risk. Therefore, Johnny's can sue and thus the insurance company, which is subject only to the same defenses that the City would have against Johnny's, can sue.

5. Johnny's breached its duty to the City to name the City [as] an additional insured. This does not mean the City should thus gain from that breach a greater right than it had if the lessee had not breached its duty to provide insurance. Here the City's position is otherwise and this Court concludes the position is contrary to general legal principles, let alone equitable principles.

Trial testimony was taken from various individuals. John Gerontis, Johnny's vice president at the time the lease was signed, testified that: (1) the lease was drafted by the City; (2) at the time of the lease execution, Johnny's knew it was obligated to purchase a standard form fire policy with an extended coverage endorsement which named the City as an additional insured; (3) Johnny's purchased an all-risk policy, instead of the coverage required by the lease; (4) the City was not named as an additional insured on the all-risk policy due to Johnny's oversight; and (5) Johnny's intended only to insure the City to the extent required by the lease terms.

Arthur Allen, an insurance expert, testified that the phrase "standard form fire policy" has a common meaning in the insurance industry. He stated that, in his opinion, such language in a lease requires coverage such as that contained in Plaintiffs exhibit 10 (Form MP-51). He further testified that an insurance professional would interpret the phrase "extended coverage for perils, vandalism and malicious mischief" in a lease as requiring an extended coverage endorsement such as was also contained in Plaintiffs exhibit 10 (Form CF 1001). Finally, Allen testified that even if Johnny's had secured the insurance called for in the lease and named the City as an additional insured, such insurance would not have protected the City as lessor against liability arising out of its off-site activities. The City called no witnesses to refute Gerontis's or Allen's testimony.

 Johnny's submitted unrefuted evidence that the insurance provisions in the policy have a standard meaning in the insurance industry. The City drafted the lease using the standard language. The construction of a lease is governed by the intent of the parties at the time of execution, as manifested by the plain meaning of the language used. *See Washington Hydroculture, Inc. v. Payne,* 96 Wn.2d 322, 328, 635 P.2d 138 (1981). Any ambiguities in a lease drafted by a lessor are resolved in favor the lessee. *Washington Hydroculture,* 96 Wn.2d at 328. Here, the City drafted the insurance coverage portions of the lease using

language which has common meaning in the insurance industry. In our view, the City's use of that language without further clarification implies that it intended for the language to be given its common meaning. We are thus satisfied that the challenged findings are supported by substantial evidence. Moreover, those findings amply support the trial court's conclusions of law; for if the City wanted to be covered for its conduct outside the lessor-lessee relationship, it could have included such a requirement in the language of the lease.

## II. Validity of the Subrogation Claim

The City contends that Johnny's insurer cannot subrogate against it because: (1) Johnny's has unclean hands; (2) the City is a co-owner of the insured premises; and (3) the City is the lessor of the named insured. At issue is whether the insurer of a commercial tenant may maintain a subrogation action against the tenant's landlord for damages to the leased premises caused by the landlord's negligence.

### A. Unclean Hands

The City contends that: (1) the lease obligated Johnny's to acquire certain insurance and to name the City as an additional insured; (2) Johnny's did not obtain the required coverage, nor did it name the City as an additional insured on the policy which was purchased; (3) Johnny's conduct constituted a breach of the lease; and thus (4) Johnny's insurer should not, in equity, be allowed to assert that breach as grounds for denying the City the benefit of the insurance that was acquired.

Subrogation is an equitable doctrine. Its purpose is to avoid unjust enrichment. *Touchet Vly. Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 341, 831 P.2d 724 (1992) (citing *General Ins. Co. of Am. v. Stoddard Wendle Ford Motors*, 67 Wn.2d 973, 976, 410 P.2d 904 (1966)). The right to subrogation depends upon the circumstances and equities of the particular case. *See Livingston v. Shelton*, 85 Wn.2d 615, 619, 537 P.2d 774 (1975), *cert. denied*, 424 U.S. 958 (1976). Subrogation may be invoked only where justice

demands its application, and where the equities of the party asking for it are greater than those of his or her adversary. *See Livingston*, 85 Wn.2d at 619.

In the usual context, subrogation allows an insurer to recover what it has paid to its insured under a policy by suing the wrongdoer. *Touchet Valley*, 119 Wn.2d at 341. Simply stated, the insurer steps "into the shoes" of its insured. *Touchet Valley*, 119 Wn.2d at 341 (citing Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 3.10(a)(1) (1988)). The insurer/subrogee has rights equal to, but not greater than, those of the injured party. *See Touchet Valley*, 119 Wn.2d at 341; *Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.*, 44 Wn. App. 409, 414, 722 P.2d 861 (1986).

■ In the present case, the trial court found the loss sustained by Johnny's was covered by the all-risk policy, but would not have been covered by the insurance coverage contemplated in the lease. The City assigned no error to this finding and it is therefore a verity on appeal. *See, e.g., State v. Hilyard*, 63 Wn. App. 413, 417, 819 P.2d 809 (1991), *review denied*, 118 Wn.2d 1025 (1992). It would unjustly enrich the City to extend coverage for losses which would not have been covered under the insurance called for in the lease. Such unjust enrichment is precisely what the principle of subrogation is intended to prevent. *See Touchet Valley*, 119 Wn.2d at 341.

### B. Co-Owner Status Bars Subrogation

■ The City contends that Johnny's insurer cannot subrogate against the City because the City is a co-owner of the property, and therefore, a coinsured of the premises. Generally, where an insurer has paid a loss to one insured under a policy, the insurer cannot, as subrogee, recover the amount paid from a coinsured under the policy, even if the coinsured's negligence caused the loss. *See Stoddard*, 67 Wn.2d at 979-80; *New Amsterdam Cas. Co. v. Homans-Kohler, Inc.*, 305 F. Supp. 1017, 1019 (D.R.I. 1969). At issue, then, is whether the City was a coinsured under the all-risk policy purchased by Johnny's. The term "coinsured" does not necessarily apply

only to named insureds, but may also apply to all for whose benefit the insurance was written. *See, e.g., Stoddard,* 67 Wn.2d at 979.

In *Stoddard,* the court held that a buyer's insurer's subrogation claim against an allegedly negligent seller was barred because the insurance policy on the damaged vehicle was for the "actual benefit" of the seller as well as the buyer. In reaching its decision, the court noted that (1) while the seller was not named as a loss payee on the policy, its agent was, and (2) the insurer had listed the seller as a named insured on its cancellation notice. *See Stoddard,* 67 Wn.2d at 978-79.

█ Unlike *Stoddard,* the policy purchased by Johnny's does not name the City or its agent as an insured or a loss payee, nor has Johnny's insurer acknowledged that the City was an insured on the policy. Thus, we conclude that the all-risk policy was not written for the City's benefit and, therefore, the insurer's subrogation claim is not barred. Furthermore, even if the all-risk policy was written to protect the City against certain risks, there is undisputed evidence that such protection would not have been intended to extend to the risks involved here.

## C. Lessor Status Bars Subrogation

The City argues that Johnny's insurer cannot assert subrogation rights against the City, because it is the lessor of the named insured. We find no cases directly addressing the issue of lessees seeking recovery from lessors. Nevertheless, cases addressing the issue of lessors seeking to recover from lessees bear review.

In *Cascade Trailer Court v. Beeson,* 50 Wn. App. 678, 749 P.2d 761, *review denied,* 110 Wn.2d 1030 (1988), the insurer of the lessor's rental property sought to subrogate against a lessee for negligently causing a fire on the property. At issue was whether the tenants were "implied coinsureds" under the lessor's fire insurance policy, thus defeating the insurer's right of subrogation against them. In concluding

that the tenants were implied coinsureds, Division Three of this court reasoned that:

> [w]hether rent covers all of a landlord's expenses, including insurance premiums, is not the critical question. Rather, the issue concerns the parties' reasonable expectations. Where the landlord has secured fire insurance covering the leased premises, the tenant can reasonably expect the insurance to cover him as well, unless the parties have specifically agreed otherwise. Why? — because the tenant is in privity of contract with the landlord, and he has a property interest in the premises the insurance protects.

*Beeson,* 50 Wn. App. at 686.

Similarly, in *Rizzuto v. Morris,* 22 Wn. App. 951, 592 P.2d 688, *review denied,* 92 Wn.2d 1021 (1979), the court held that a landlord's insurer was not entitled to subrogate against a commercial tenant who negligently caused a fire. There, the lease contained a clause exempting the lessee from liability for fire damage. Considering the exculpatory clause in conjunction with evidence that the lessor had told the lessee that he, the lessor, carried fire insurance on the leased building, the court concluded that the parties intended for the fire insurance to cover the lessee.

In *Millican,* a tenant's negligence caused a gas explosion which damaged the tenant's leasehold and other portions of the building in which the leasehold was located. By the lease terms, the landlord and tenant had waived claims against each other for "losses resulting from . . . fire and other coverages provided by their respective casualty insurance policies . . .". *Millican,* 44 Wn. App. at 411. The landlord brought an action against the tenant for damages. The court held that the waiver barred recovery only as to the insured losses on the leasehold premises, reasoning that:

> where a lease that relates to specified premises does not refer to any other property and does not attempt to state the parties' rights and obligations with respect to any other property, a waiver of responsibility in the lease cannot be extended to relieve the lessee from liability for damage done to property that is not the subject of the lease.

*Millican,* 44 Wn. App. at 418 (citing *Hardware Mut. Ins. Co. v. C.A. Snyder, Inc.,* 242 F.2d 64 (3d Cir. 1957)). Hence, the

court concluded that "the parties' intent [was] . . . to waive their subrogation rights against each other for risks arising out of the relationship to which they were committing themselves, *viz.,* lessor and lessee, and no other." *Millican,* 44 Wn. App. at 418.

Although each of the cited cases involves a landlord seeking to recover from a tenant, rather than a tenant seeking to recover from a landlord, the rule that a coverage determination is based upon the parties' intent is equally valid here. Thus, we must determine whether the parties intended for the loss caused by the City's construction project to be covered under Johnny's insurance.

We conclude such coverage was not intended by the parties.

The record indicates that the insurance language in the lease has a standard meaning in the insurance business. According that language its standard meaning, the loss in this case would not have been covered even if Johnny's had obtained the coverage contemplated in the lease. Moreover, while the all-risk policy acquired by Johnny's arguably provided broader coverage than that called for in the lease, a company official for Johnny's testified that Johnny's intended to insure the City only to the extent required by the lease. That testimony as to intent was unrefuted.

Affirmed.

MORGAN, C.J., and SEINFELD, J., concur.