7 P.3d 835 (2000)
102 Wash.App. 349
STATE of Washington, Respondent,
v.
Douglas Scott EWING, Appellant.
No. 44735-1-I.
Court of Appeals of Washington, Division 1.
September 5, 2000.
*836 James Dixon & Robert Weppner, Seattle, for Appellant.
E. Bradford Bales, Seattle, for Respondent.
ELLINGTON, J.
An insurance company that pays benefits to a crime victim suffers a loss as a direct result of the crime, and a sentencing court may order the offender to pay restitution to the insurance company without regard to whether the company could pursue a civil subrogation claim.

FACTS
Douglas Ewing and Susan Ewing were married for 12 years. They separated on December 15, 1997. By April 1998, both had signed a property agreement under which Susan Ewing would receive, among other things, the family home and real property, the household goods and furnishings and the homeowner's insurance policy. Ewing was to receive, among other things, real property located near Spokane, Washington.
Ewing was last to sign, and before the agreement was delivered to Susan Ewing or filed with the court, Ewing went to the home of his brother's wife, where Susan and their children were visiting. He physically assaulted Susan and threatened to kill her. Ewing next went to the family home, kicked in the door, poured gasoline throughout, and lit a fire. Neighbors heard the smoke alarm and saw Ewing leave. The house was severely burned and is no longer habitable.
Safeco Insurance Company paid Susan Ewing $242,035.89 for damages to the home and personal property, and for temporary housing. To facilitate Susan's settlement with Ewing as to other property issues, including her receipt of the Spokane property, Safeco waived its subrogation interest against Ewing. However, Safeco expressly retained its right to seek restitution in the criminal sentencing process. In consideration of Ewing's conveyance of the Spokane property to her, Susan Ewing released Ewing from all claims, losses, and damages that she may have against him.
Ewing pleaded guilty to first degree arson and felony harassment. The sentencing court ordered him to pay $41,000 in restitution to Safeco.[1]

DISCUSSION
Ewing challenges the trial court's restitution order. He argues that principles of subrogation preclude such an award, because Safeco waived its subrogation right against him, his wife released him from civil liability, and he is co-owner of the home and a named insured on the homeowner's policy.
The Sentencing Reform Act of 1981(SRA) requires the court to impose restitution as part of an offender's sentence, except in extraordinary circumstances.[2] Restitution *837 is "primarily punitive in nature."[3] The language of restitution statutes indicates the Legislature's intent to grant broad discretion to sentencing courts in awarding restitution.[4] Such an award is to be based on "easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury."[5] The statute impliedly limits restitution to victims;[6] a "victim" is defined as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged."[7]
Ewing argues Safeco was not a victim because Safeco did not suffer a loss as a direct result of Ewing's crime. Ewing acknowledges that when insurance companies pay benefits to injured insureds, the companies are appropriate recipients of restitution.[8] But Ewing contends that such orders depend entirely upon principles of subrogation, and argues the trial court erred in ordering restitution to Safeco because Safeco would have no subrogation rights here.
The doctrine of subrogation "enables an insurer that has paid an insured's loss pursuant to a policy ... to recoup the payment from the party responsible for the loss."[9] The rights of the insurer/subrogee are equal to, but not greater than, those of the injured party.[10] Ewing therefore contends that his wife's release of her claims against him, and Safeco's waiver of its right of subrogation, each independently operate as a bar to Safeco's restitution. As a further ground for barring restitution under the subrogation doctrine, Ewing argues that because he was a co-insured, Safeco cannot, as a subrogee, recover an amount paid to another co-insured, even if the loss was caused by the first co-insured.[11]
We do not address whether Ewing is correct about Safeco's subrogation rights, because we reject his premise. The court's authority to order restitution in a criminal proceeding is not dependent upon the viability of related civil claims.
The concepts of the civil law are compensatory, not punitive, and are not easily imported into the penal statutes. The SRA authorizes, for example, that restitution may be ordered in an amount up to twice the defendant's gain, or double the victim's loss.[12] Such authority underscores the punitive, rather than compensatory, nature of restitution. The power to order restitution is derived only from statute.[13] We are unable to discern why civil doctrines such as the subrogation rules have any place in interpretation of criminal statutes. Just as the criminal *838 process should not be used as a means to enforce civil claims,[14] the rules of the civil law should not be imported as a limitation to the sentencing authority granted by the legislature to criminal courts. The questions the sentencing court must answer are whether the claimed loss resulted from the crime, and whether it is the kind of loss for which restitution is authorized. If so, the statute plainly grants discretion to make a restitution award. The statute requires no inquiry about the viability of civil claims, nor is any such inquiry called for by public policy.
Our conclusion is consistent with the reasoning of the Supreme Court in State v. Davison,[15] in which the Court affirmed an order of restitution to the City of Seattle for wages paid to an assault victim, even though there was no evidence the City was legally obligated to pay. The Court held the City was a victim entitled to restitution, even though it was not the immediate victim of the assault.[16]
Ewing relies upon State v. Martinez,[17] which held that an order of restitution to an insurance company for costs incurred in investigating an arson exceeded the court's statutory authority because investigation costs are not among the "elements of injury" for which restitution is authorized by the statute.[18] The Martinez court also concluded that because the insurer paid nothing to its insured, it did not suffer injury to its property and so was not a victim as defined by the statute.[19] Then, in distinguishing Davison, the Martinez court made the following statement upon which Ewing relies for his argument here:

Davison's interpretation of the language of RCW 9.94A.142 is best understood under a quasi-subrogation theorythe employer stood in the shoes of the assault victim, who could clearly have recovered lost wages under the statute if the employer had not paid them....[20]
We are uncertain what the Martinez court meant by "quasi-subrogation theory," but its reference to subrogation as an analogy is not the first such reference, nor the first to cause some confusion. In State v. Barnett,[21] the court also drew such an analogy, resulting in similar confusion. Clarification was shortly forthcoming. In State v. Smith,[22] we rejected the subrogation argument, stating: "[T]he Barnett court did not base its decision on subrogation principles[.]"[23] The Smith court made clear that the proper question is whether the statute authorizes the award.
To the extent the Martinez court sought to invoke principles of subrogation for more than their value as analogy, we disagree; but we are extremely doubtful the Martinez court had any such purpose in its discussion of Davison. First, Davison did not utilize a subrogation theory in its analysis, but simply discussed principles of causation. Second, the Martinez court's point was entirely unrelated to subrogation. The court held only that where the loss claimed by the insurer was confined to its investigation costs, the loss was not within the class of losses for which the statute authorizes restitution.
Ewing's reliance on Martinez in misplaced. Martinez does not stand for the proposition that the civil subrogation rules have been imported into the criminal restitution statutes. Unlike the loss discussed in Martinez, Safeco's loss is squarely within one of the classes of damages for which restitution is permitted by the statute.
Ewing's contentions are similar to another argument we recently rejected. In holding that the "American rule" barring recovery of attorney fees in a civil suit does not preclude *839 restitution for attorney's fees expended in related civil litigation to recover damage caused by defendant's crime, this court stated, "[w]e fail to see how a rule designed to regulate recovery of attorney fees in civil cases has any application in deciding an award of restitution in a criminal proceeding."[24]
Our interpretation of the restitution statute finds additional support in case law. Washington courts have extended restitution to recipients other than immediate victims under restitution statutes containing slightly different language.[25] For example, restitution to insurers is permitted under the suspended sentence statute: "[W]e hold that insurance companies are damaged when they are required to pay claims because of crimes such as burglary."[26]
As the Barnett court observed: "[A] defendant should not profit simply because the victim had the foresight to contract with a third party for full or partial protection of any loss or damage caused by criminal behavior."[27] We would add to that observation that we see no reason that the costs of crime should be borne by the large pool of law-abiding policy holders whose premiums will be the source of payments to victims.
We hold that the complexities of the subrogation doctrine have no place in a restitution analysis. Safeco incurred a financial loss as a direct result of Ewing's arson. RCW 9.94A.142 authorizes restitution to Safeco.
Affirmed.
APPELWICK, J., and WEBSTER, J., concur.
NOTES
[1] In calculating the amount of the award, the court set the value of the home at $242,000, the amount Safeco paid to Susan Ewing. The court credited Ewing $121,000 for conveying his half interest in the family home to Susan Ewing, and $80,000 for conveying his half interest in the Spokane property to her. The court ordered Ewing to pay the difference, $41,000, to Safeco. Ewing does not challenge the amount of the restitution award.
[2] The statute provides:

The court shall order restitution whenever the offender is convicted of a felony that results in injury to any person or damage to or loss of property, whether the offender is sentenced to confinement or placed under community supervision, unless extraordinary circumstances exist that make restitution inappropriate in the court's judgment. The court shall set forth the extraordinary circumstances in the record if it does not order restitution.
RCW 9.94A.120(19).
[3] State v. Edelman, 97 Wash.App. 161, 166, 984 P.2d 421 (1999), review denied, 140 Wash.2d 1003, 999 P.2d 1262 (2000).
[4] State v. Davison, 116 Wash.2d 917, 919, 809 P.2d 1374 (1991).
[5] RCW 9.94A.142(1).
[6] State v. Martinez, 78 Wash.App. 870, 882, 899 P.2d 1302 (1995).
[7] RCW 9.94A.030(40). The SRA does not define "person." See RCW 9.94A.030.
[8] See, e.g., State v. Barnett, 36 Wash.App. 560, 562, 675 P.2d 626 (1984).
[9] Elaine M. Rinaldi, Apportionment of Recovery Between Insured and Insurer in a Subrogation Case, 29 TORT & INS. L.J. 803, 803 (1994).
[10] Johnny's Seafood Co. v. City of Tacoma, 73 Wash.App. 415, 422, 869 P.2d 1097 (1994).
[11] In support of this proposition, Ewing cites Johnny's Seafood Co., 73 Wash.App. at 422, 869 P.2d 1097 (holding that generally, where an insurer has paid a loss to one insured under a policy it cannot collect, as a subrogee, from a coinsured, even when the coinsured's negligence caused the loss). Johnny's Seafood Co. and the cases on which it relies do not consider intentional acts. Ewing does not explain how his act of setting fire to the property could be construed as negligence.
[12] See RCW 9.94A.142(1).
[13] State v. Edelman, 97 Wash.App. 161, 165, 984 P.2d 421 (1999), review denied, 140 Wash.2d 1003, 999 P.2d 1262 (2000).
[14] See State v. Barr, 99 Wash.2d 75, 79, 658 P.2d 1247 (1983); Barnett, 36 Wash.App. at 563, 675 P.2d 626.
[15] 116 Wash.2d 917, 809 P.2d 1374 (1991).
[16] Davison, 116 Wash.2d at 921, 809 P.2d 1374.
[17] 78 Wash.App. 870, 899 P.2d 1302 (1995).
[18] Martinez, 78 Wash.App. at 882, 899 P.2d 1302.
[19] Martinez, 78 Wash.App. at 882, 899 P.2d 1302.
[20] Martinez, 78 Wash.App. at 883, 899 P.2d 1302.
[21] 36 Wash.App. 560, 562, 675 P.2d 626 (1984).
[22] 42 Wash.App. 399, 711 P.2d 372 (1985).
[23] Smith, 42 Wash.App. at 402, 711 P.2d 372.
[24] State v. Christensen, 100 Wash.App. 534, 538, 997 P.2d 1010 (2000).
[25] See State v. Barr, 99 Wash.2d 75, 658 P.2d 1247 (1983) (as condition of probation, restitution to widow and child of victim of negligent homicide); State v. Sanchez, 73 Wash.App. 486, 869 P.2d 1133 (1994) (juvenile required to pay restitution to insurer contractually obligated to compensate insured/victim because such restitution serves the purpose of Juvenile Justice Act); State v. Forbes, 43 Wash.App. 793, 719 P.2d 941 (1986) (as condition of probation, restitution to county department of public safety that supplied undercover detective with money to spend at illegal gambling establishment permissible); State v. Jeffries, 42 Wash.App. 142, 709 P.2d 819 (1985) (restitution award to Department of Labor and Industries for payment of disability and medical expenses to assault victim held permissible under suspended sentence statute).
[26] Barnett, 36 Wash.App. at 562, 675 P.2d 626.
[27] Barnett, 36 Wash.App. at 563, 675 P.2d 626.